**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Nia Green, Lauren Szymula, and Ariana King, individually and as the representative of a class of similarly situated persons, and on behalf of the Health Care Plans for Faculty & Staff of the University of Rochester,<br><br>             Plaintiff,<br><br>v.<br><br>University of Rochester, University of Rochester Vice President and Chief Human Resources Officer, and Does 1-20,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.      Plaintiffs Nia Green, Lauren Szymula, and Ariana King ("Plaintiffs"), as representatives of the class defined herein, and on behalf of the Health Care Plans for Faculty & Staff of the University of Rochester (the "Plan"), bring this action under the Employee Retirement Income Security Act ("ERISA") against University of Rochester, University of Rochester Vice President and Chief Human Resources Officer, and Does 1-20 (together, "Defendants"). As described herein, Defendants have breached their fiduciary duties under ERISA by (1) failing to prudently select and monitor the Plan's preferred provider organization ("PPO") medical insurance options, allowing the low-deductible option to be financially dominated by the high-deductible option; and (2) failing to disclose this material information to the Plan's participants. Defendants' actions and omissions have caused millions of dollars in losses to the proposed class. Plaintiffs bring this action to recover these losses, prevent further similar conduct, and obtain equitable and other relief as provided by ERISA.

**PRELIMINARY STATEMENT**

2.      As of 2023, 53.7% of civilian Americans relied upon their employer or union for health insurance coverage.[1] This employment-based coverage is by far the most common type of health insurance coverage in the United States,[2] and along with retirement benefits, make up 13% of total national compensation.[3] Americans also devote a substantial percentage of their annual expenditures to healthcare. In 2023, healthcare accounted for 8% of all consumer expenditures.[4] As such, it is crucial that each health insurance option offered by employers provides unique advantages to participants without needlessly wasting their money.

3.      To this end, employers must confirm that no health insurance option is financially dominated by another. In economic terms, an option is dominated when it provides the same financial value to a consumer yet costs more than an alternative. A health insurance option is financially dominated when there is another option that results in lower total out-of-pocket expenses to participants, inclusive of premiums and regardless of the amount of medical care received.[5] In essence, the dominated option costs more but provides no additional benefit.

4.      In managing the Plan, Defendants have assembled PPO options in which the low-deductible option is financially dominated by the higher deductible option, in breach of their fiduciary duty of prudence. In addition, Defendants are responsible for knowing about the dominated nature of the low-deductible option but have failed to communicate this material information to the Plan's participants, in breach of their fiduciary duty.

---

[1] https://www2.census.gov/library/publications/2024/demo/p60-284.pdf.
[2] *Id.*
[3] Monahan, Amy and Richman, Barak D., Hiding in Plain Sight: ERISA's Cure for the $1.4 Trillion Health Benefits Market (2025). Yale Journal on Regulation, Volume 42, No.1, Pp. 234-290, at 237 n.1; see also at 263-264 (the full cost of employer sponsored health insurance is a compensation expense that reduces wages accordingly).
[4] https://www.bls.gov/news.release/pdf/cesan.pdf.
[5] *See* Choose to Lose: Health Plan Choices from Menu with Dominated Options, at 1321.

5.     To purportedly accommodate the varying needs of their employees, Defendants offer a high deductible ("YOUR HSA-Eligible") and a low deductible ("YOUR PPO") option. These options vary in features such as monthly premiums, deductibles, coinsurance, and out-of-pocket maximums. The YOUR PPO option is accompanied by higher premiums in exchange for a lower annual deductible, while the YOUR HSA-Eligible option offers lower premiums but higher annual deductibles.

6.     The different options in a health plan should offer employees a tradeoff. A prudent health plan offers a high deductible option (with a lower premium) that is less expensive than a low deductible option (with a higher premium) at low levels of medical spend; but the high deductible option comes with a higher deductible and higher out-of-pocket maximums, causing it to be more expensive than the low deductible option after the employee incurs a moderate level of medical bills. Instead, Defendants offer a high deductible (YOUR HSA-Eligible) option that provides lower out-of-pocket expenses *for all levels of medical spending*, meaning the YOUR HSA-Eligible option financially dominates the low deductible (YOUR PPO) option.

7.     Defendants' management of the Plan's PPO options is subject to ERISA's strict fiduciary duties. 29 U.S.C. § 1104(a)(1). These duties are "'the highest known to the law.'" *LaScala v. Scrufari,* 479 F.3d 213, 219 (2d Cir. 2007) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). Fiduciaries must act with the "care, skill, prudence, and diligence" that a "prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B), and "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1)(A). Defendants have breached their fiduciary duty of prudence by assembling a menu of options where there is *no* financial benefit to selecting the YOUR PPO option.

3

8. Offering a financially dominated option like the YOUR PPO imprudently shifts the burden from the employer to participants to determine the financial benefits of each option including the potentially dominated nature of the options—a task requiring a complicated mathematical computation to reveal. The consequences of this shift are material. In a 2017 study, researchers found that 61% of employees selected a financially dominated option when one existed.[6]

9. The idea that individuals willingly enroll in a financially dominated option to achieve lower deductibles has been debunked, and a lack of insurance understanding is instead the overwhelming cause of this phenomenon. When the consequences of selecting a financially dominated option were shared with participants, researchers found this reduced the share of subjects choosing a dominated option to 18%.[7] When the focus was placed upon the enrollment decisions of individuals deemed to have a high understanding of insurance, it was found that less than 2% chose a dominated option.[8] This underscores the importance of offering prudent, non-dominated health insurance options to participants, and of disclosing the dominated nature of an option where one is offered. Defendants have failed to do either.

10. Defendants' decision to offer the financially dominated YOUR PPO option and the failure to disclose its dominated nature to participants has resulted in the Plan and its participants paying wholly excessive and unnecessary healthcare expenses in the form of lost wages due to excessive premiums unaccompanied by any reduced out-of-pocket.

---

[6] Choose to Lose: Health Plan Choices from Menu with Dominated Options, at 1321.
[7] *Id.* at 1325.
[8] *Id.*

11.     Based on this conduct, Plaintiffs assert claims against Defendants for breaches of the fiduciary duties of prudence and loyalty. Plaintiffs also assert a claim against Defendant University of Rochester for its failure to monitor the fiduciaries it appointed to manage the Plan.

## JURISDICTION AND VENUE

12.     Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employer-sponsored health insurance plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. §§ 1109 and 1132.

13.     This case presents a federal question under ERISA, and therefore the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

14.     Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the Plan is administered, where the breaches of fiduciary duties giving rise to this action occurred, and where Defendants may be found.

## THE PARTIES

### *Plaintiffs*

15.     Plaintiff Nia Green participated in the Health Care Plans for Faculty & Staff of the University of Rochester from approximately 2021-2025 and is a former participant in the Plan. During Plaintiff's time in the Plan, she was enrolled in the YOUR PPO option at the individual coverage level from 2024-2025. Plaintiff has been financially injured by Defendants' unlawful conduct, and her compensation would have been higher if Defendants had not violated ERISA as described herein.

16.     Plaintiff Lauren Szymula participated in the Health Care Plans for Faculty & Staff of the University of Rochester from 2018-2022 and again beginning in 2024. She is a current

5

participant in the Plan. During Plaintiff's time in the Plan, she was enrolled in the YOUR PPO option at the individual coverage level in 2024. Plaintiff has been financially injured by Defendants' unlawful conduct, and her compensation would have been higher if Defendants had not violated ERISA as described herein.

17.     Plaintiff Ariana King participated in the Health Care Plans for Faculty & Staff of the University of Rochester from approximately 2016 through 2022 and is a former participant in the Plan. During Plaintiff's time in the Plan, she was enrolled in the YOUR PPO health plan at the individual coverage level from 2018-2022. Plaintiff has been financially injured by Defendants' unlawful conduct, and her compensation would have been higher if Defendants had not violated ERISA as described herein.

### *Defendants*

18.     Defendant University of Rochester (the "University") is a private research university located in Rochester, New York.

19.     The University is the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B). The University has named the Vice President and Chief Human Resources Officer (the "Vice President") as the "administrator" of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). As the administrator of the Plan, the Vice President exercises discretionary authority or control with respect to the administration of the Plan and management and disposition of Plan assets. The Vice President is therefore a functional fiduciary under 29 U.S.C. § 1002(21)(A).

20.     The University may delegate its fiduciary responsibilities to any other person, persons, or entity. Any individuals or entities not named in this Complaint to whom the University delegated fiduciary functions or responsibilities are also fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and 1105(c)(2). Because any such individuals or entities that have been delegated

6

fiduciary responsibilities are not currently known to Plaintiffs, they are collectively named in this Complaint as Does 1-20 and are included in all references to "Defendants" collectively.

***Health Care Plans for Faculty and Staff of the University of Rochester***

21.     The Plan was established July 1, 1956, and provides certain welfare and other benefits for eligible personnel and retirees of the University as part of their overall compensation. Included within these benefits are health insurance, vision benefits, prescription drug benefits, condition management programs, and lifestyle management programs.

22.     For their health insurance, Plan participants have a choice between two different PPO coverage options.

23.     Premiums for coverage under either of the available health insurance options are deducted from participants' paychecks on a pre-tax basis. Premiums are deducted on either a bi-weekly, semi-monthly, or monthly basis, in accordance with the frequency of a participant's paycheck.

24.     The Plan's two PPO coverage options are YOUR PPO, the low-deductible option, and YOUR HSA-Eligible, the high-deductible option. If participants elect coverage through the YOUR HSA-Eligible option, they may choose to open and contribute to a Health Savings Account ("HSA"), which may be used to pay the cost of qualified healthcare expenses as defined by the Internal Revenue Service.[9] Any balance remaining in a participant's HSA at the end of the year may be rolled over for use in the future.

25.     Critically, there is no difference in health care coverage or quality for participants in the YOUR PPO and YOUR HSA-Eligible options. The only differences between the PPO

---

[9] Participants enrolled in the YOUR PPO option are ineligible for an HSA but may participate in an FSA. YOUR HSA-Eligible participants are also eligible to have an FSA, but if the participant chooses to have an HSA, they may only contribute to a Limited Purpose FSA.

options are the financial terms: premium amounts, deductibles, coinsurance rates, copayments, maximum out-of-pocket expenses, and eligibility for a HSA or Flexible Spending Account ("FSA"). Participants in both options may choose to receive care from any licensed doctor, hospital, or facility, but will incur the lowest out-of-pocket expenses for "Tier 1" services (that is, services performed by members of the Plan's Accountable Health Partners Network). Participants incur the next lowest out-of-pocket costs for "Tier 2" services (that is, services performed by members of the Plan's Excellus Blue Cross Blue Shield National Network). Finally, participants incur the highest out-of-pocket costs for "Tier 3" or "Out-of-Network" services, which are services performed by providers that are not part of the Tier 1 or Tier 2 networks.

26. Regardless of which option is selected, participants may choose between coverage tiers depending on the desired number of insured individuals. Participants may choose between Single, Employee and Spouse or Domestic Partner, Employee and Child(ren), or Family coverage tiers. The premiums paid by a participant are based on the coverage tier selected, employment status (whether the individual is full-time or part-time), and salary.

27. The Plan is self-insured. This means it is funded by both employee and employer contributions that are deposited within a trust, pays claims and other expenses from the trust, and is exempt from state insurance regulations.

**<u>ERISA'S FIDUCIARY DUTIES</u>**

28. "ERISA protects employee pensions and other benefits . . . by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (citation omitted). In the ERISA context, the term "plan" means "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both[.]" 29 U.S.C. § 1002(3). An employee welfare benefit plan includes "any

8

plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits[.]" 29 U.S.C. § 1002(1). To protect participants of employee benefit welfare plans like the Plan, 29 U.S.C. § 1104(a)(1) states, in relevant part:

> [A] fiduciary shall discharge his duties with respect to a plan …
>
> (A)    for the exclusive purpose of
>
> (i)    providing benefits to participants and their beneficiaries; and
>
> . . . .
>
> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims . . . .

These fiduciary duties are "'the highest known to the law.'" *LaScala,* 479 F.3d at 219 (quoting *Donovan*, 680 F.2d at 272 n.8).

## DUTY OF LOYALTY

29.    "The duty of loyalty is one of the common law trust principles that apply to ERISA fiduciaries, and it encompasses a duty to disclose." *King v. Blue Cross & Blue Shield of Illinois*, 871 F.3d 730, 744 (9th Cir. 2017). Indeed, "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010) (citation omitted). This includes "an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan." *Devlin v. Empire Blue Cross and Blue Shield*, 274 F.3d 76, 89 (2d. Cir. 2001) (citation omitted). Fiduciaries' duty to communicate material facts to participants "exists when a beneficiary asks fiduciaries for information, and even when he or she

9

does not." *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993) (citation omitted).

30.    "'[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty[.]'" *Devlin*, 274 F.3d at 88 (quoting *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995)). A fiduciary must inform participants "when it knows that silence may be harmful and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007); *see also* Restatement (Third) of Trusts § 82 cmt. d (outlining "an affirmative requirement that . . . the trustee inform fairly representative beneficiaries of important developments and information that appear reasonably necessary for the beneficiaries to be aware of in order to protect their interests.").

31.    This general fiduciary duty to disclose material information is supplemented by a specific statutory obligation to provide information in a form "sufficiently accurate and comprehensive to reasonably apprise [] participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

### DUTY OF PRUDENCE

32.    "If there is . . . a 'hallmark' of a fiduciary activity identified in the statute, it is prudence." *Sweda v. Univ. of Penn.*, 923 F.3d 320, 333 (3d Cir. 2019). This is not a lay person standard, but instead "requires expertise in a variety of areas[.]" Dep't of Labor, *Meeting Your*

10

*Fiduciary Responsibilities* (Sept. 2017).[10] Because ERISA makes no distinction among types of employee benefit plans, this duty applies to all ERISA-covered plans. *See Varity Corp.*, 516 U.S. at 596. Indeed, "the fiduciary duty provisions of ERISA . . . apply with equal force to welfare and pension plans." *Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996). Thus, the duty of prudence includes "a continuing duty to monitor [benefit options] and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting [benefit options]." *Tibble v. Edison Intern.*, 575 U.S. 523, 529 (2015). If a benefit option is imprudent, the plan fiduciary "must dispose of it within a reasonable time." *Id.* at 530 (quotation omitted). Fiduciaries therefore may be held liable for either "assembling an imprudent menu" of benefit options or for failing to monitor the plan's benefit options to ensure that each remains prudent. *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3, 423-24 (4th Cir. 2007).

33.     It is no defense to the imprudence of some benefit options that others may have been prudent; a meaningful mix and range of options does not insulate plan fiduciaries from liability of breach of fiduciary duty. *See Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022) (*"Hughes I"*). "[T]he Seventh Circuit clarified that a pleading need not show that a prudent alternative was actually available; showing that an alternative prudential option was plausibly available sufficed." *Acosta v. Bd. of Trustees of Unite Here Health*, 2023 WL 2744556, at *4 (N.D. Ill. Mar. 31, 2023) (citing *Hughes v. Nw. Univ.*, 63 F.4th 615, 629-30 (7th Cir. 2023) (*"Hughes II"*)).

### FIDUCIARY VS. SETTLOR FUNCTIONS

34.     Whether these duties apply to the actions of the Plan sponsor and the Plan's fiduciaries hinges upon the distinction between fiduciary and settlor functions. Generally, the

---

[10] *Available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resourcecenter/publications/meeting-your-fiduciary-responsibilities.pdf.

decision to adopt, modify, or terminate a welfare plan is a settlor decision outside the bounds of ERISA. *See Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 79 (1995). However, activities undertaken to implement settlor decisions are fiduciary functions subject to ERISA. 29 U.S.C. § 1002(21)(A)(i), (iii) (ERISA defines a fiduciary as any person "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."); *see also* DOL Adv. Opinion No. 2001-01A, 2001 WL 125092, at *2 (Jan. 18, 2001) (finding that the implementation of a settlor decision is a fiduciary activity). Thus, although the decision to offer health insurance to plan participants may be a settlor decision, an employer's decision as to *which* specific health insurance options to offer is subject to ERISA's fiduciary duties as an implementation of a settlor decision.

**DEFENDANTS' VIOLATIONS OF ERISA**

**I.   DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES IN MANAGING THE PLAN**

35.   As fiduciaries, Defendants are required to ensure that costs incurred by participants are reasonable. *See Sweda*, 923 F.3d at 328 ("Fiduciaries must . . . understand and monitor plan expenses."); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020) (discussing a fiduciary's duty to keep plan expenses under control); *see also* Restatement (Third) of Trusts § 90, cmt. A ("Implicit in a trustee's fiduciary duties is a duty to be cost-conscious."). "Wasting beneficiaries' money is imprudent." *Hughes II*, 63 F.4th at 627 (internal quotation marks omitted). When selecting health insurance options for participants, "the responsible plan fiduciary must engage in an objective process designed to elicit information necessary to assess . . . the

reasonableness of the fees charged in light of the services provided." DOL Info. Letter from Bette J. Briggs to Diana O. Ceresi, 1998 WL 1638068, at *1 (Feb. 19, 1998).

36.     Defendants are additionally duty bound to disclose material information to Plan participants. "Information is material if there is a substantial likelihood that nondisclosure 'would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 599 (8th Cir. 2009) (quoting *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007)).

37.     Despite these duties, Defendants failed to undertake the requisite prudent process in assessing the fees, in the form of premiums deducted from participants' paychecks, within the YOUR PPO option in light of the services provided. Instead, the more costly YOUR PPO option offered to participants gives them access to the same suite of medical services with *no* financial or medical benefit to participants when compared to the YOUR HSA-Eligible option. This is true regardless of a full-time participant's coverage level (i.e., whether they are insuring themselves, themselves and their spouse or partner, or themselves, their spouse or partner, and their children), salary level, and amount of medical services received.

38.     To illustrate, for individuals selecting "Single" coverage through the YOUR PPO option, annual premiums range from $1,843 to $6,255 depending on their salary, while their Tier 1 deductible is $500 with an out-of-pocket maximum of $2,000 or $2,750.[11] In contrast, individuals selecting "Single" coverage instead through the YOUR HSA-Eligible option would incur annual

---

[11] The out-of-pocket maximum varies for employees based on salary and employment status. There is a lower out-of-pocket maximum for full-time employees earning less than $71,000/year and Strong Memorial Hospital (SMH) fellows or residents. There is a higher out-of-pocket maximum for full time employees earning more than $71,000/year and part-time employees.

premiums between $189 and $2,314 while their Tier 1 deductible is $1,650 with an out-of-pocket maximum of $2,500 or $3,000. In other words, an individual enrolled in the YOUR PPO option will pay between $1,654 and $3,941 *more* in premium payments than if they had enrolled in the YOUR HSA-Eligible option, while reducing their total out-of-pocket max by only $250 to 300. The YOUR PPO premiums exceed the reduction in out-of-pocket maximum for all salary and coverage levels, as summarized in the following table:

| Differences in YOUR PPO (Low Deductible) & YOUR HSA-Eligible (High Deductible) Premiums and Out of Pocket Maximums | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Coverage Level | Difference in LD vs. HD Annual Premium – Low Salary | Difference in LD vs. HD Annual Premium – Mid Salary | Difference in LD vs. HD Annual Premium – High Salary | Difference in LD vs. HD Out-of-Pocket Max – Low Salary | Difference in LD vs. HD Out-of-Pocket Max – Mid/High Salary | Excessive Payment Per LD Participant at Out-of-Pocket Max – Low Salary | Excessive Payment Per LD Participant at Out-of-Pocket Max – Mid Salary | Excessive Payment Per LD Participant at Out-of-Pocket Max – High Salary |
| Single | $1,654 | $3,198 | $3,941 | -$500 | -$250 | $1,154 | $2,948 | $3,691 |
| Employee + Spouse | $3,907 | $7,544 | $9,308 | -$1,000 | -$500 | $2,907 | $7,054 | $8,808 |
| Employee + Child(ren) | $2,977 | $5,757 | $7,095 | -$1,000 | -$500 | $1,977 | $5,257 | $6,595 |
| Family | $5,328 | $10,300 | $12,693 | -$1,000 | -$500 | $4,328 | $9,800 | $12,193 |

39.    The financially dominated nature of the YOUR PPO option stems from the varying premiums, deductibles, coinsurance rates, and out-of-pocket maximums between the options. Premium amounts increase given a participant's salary level, with the YOUR PPO option having the highest premiums and the YOUR HSA-Eligible option having the lowest. Premiums additionally increase within each option as more individuals are covered.

40.    Plaintiffs have confirmed that the YOUR PPO option is financially dominated by the YOUR HSA-Eligible option at every level of medical spending whether the participant seeks

care in the Tier 1, Tier 2, or Tier 3 network.[12] For example, a participant who falls in the highest

salary bracket for premiums, enrolls in Family coverage, and seeks medical care exclusively in the

Tier 1 network would spend more on their and their family's healthcare by choosing the YOUR



PPO option than choosing the YOUR HSA-Eligible option. This is true regardless of whether the

participant and their family have no medical bills, a moderate amount of medical bills, or reach

their out-of-pocket maximum, as shown here:[13]

---

[12] Under only extreme conditions is it possible for the out-of-pocket spend (including premiums) for the YOUR PPO option to exceed that of the YOUR HSA-Eligible option. Specifically, individuals would have to fall within the low salary premiums, enroll in either the Single or Employee and Child(ren) coverage levels, and incur *out-of-network (Tier 3)* medical expenses that exceed over $10,000 (for Single coverage) or $20,000 (for Employee and Child(ren) coverage).

[13] The graph only includes premiums, deductibles, coinsurance, and out-of-pocket maximums. It is not possible for the graph to include copays, which depend on the number of office visits.

41.     These results are further emphasized when considering that participants enrolled in the YOUR HSA-Eligible option are eligible for an HSA. According to the University's website, full-time faculty and staff earning less than $71,000/year and residents and fellows who certify eligibility during Open Enrollment will receive a one-time contribution of $200 (for single coverage) or $400 (for all coverage levels other than single) to their HSA from the University.[14] This contribution amount effectively lowers the out-of-pocket cost for eligible YOUR HSA-Eligible participants and widens the gap in cost between that option and the YOUR PPO option. While participants enrolled in the YOUR PPO option are eligible for an FSA, the University provides no FSA contributions.

42.     Offering PPO options to participants in which no single option is financially dominated was a plausibly available prudent alternative for Defendants, as approximately half of firms succeed in offering non-dominated options.[15] By continuing to offer the YOUR PPO option in light of its dominated nature, Defendants have breached their fiduciary duty of prudence.

43.     Further, by failing to communicate to Plan participants that enrolling in the YOUR PPO option results in the highest payroll deduction for premiums while providing no additional financial benefit over the lower premium options, Defendants failed to disclose material information in breach of their duties under ERISA.

**CLASS ACTION ALLEGATIONS**

44.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action on behalf of the Plan to seek the remedies provided by 29 U.S.C. § 1109(a). In addition, 29 U.S.C. § 1132(a)(3) authorizes any participant or beneficiary to bring suit for injunctive or other

---

[14] https://www.rochester.edu/human-resources/benefits/health-care/health-savings-accounts/
[15] How Common are Dominated Health Options? Evidence from Employer Health Benefits with High-Deductible Plans, at 30.

equitable relief. Plaintiffs seek certification of this action as a class action pursuant to these statutory provisions and Fed. R. Civ. P. 23.

45.    Plaintiffs assert their claims against Defendants on behalf of a class of participants and beneficiaries of the Plan defined as follows:[16]

> All full-time employee participants and beneficiaries of the Health Care Plans for Faculty & Staff of the University of Rochester enrolled in the YOUR PPO option at any time on or after September 23, 2019, excluding Defendants, any of their directors, and any officers or employees of Defendants with responsibility for the Plan's administrative functions.

46.    Numerosity:   The Class is so numerous that joinder of all Class members is impracticable. The Plan has thousands of participants.

47.    Typicality:    Plaintiffs' claims are typical of the Class members' claims. Plaintiffs participated in the Plan, are or were full-time employees of the University, enrolled in the YOUR PPO option, and were subject to the same preferred provider organization options as other Class members.  Defendants managed the Plan collectively and treated Plaintiffs consistently with other Class members. Defendants' imprudent actions and omissions affected all class members similarly.

48.    Adequacy:    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the Class that they seek to represent, and they have retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiffs do not have any conflicts of interest with any Class members that would impair or impede their ability to represent such Class members.

---

[16] Plaintiffs reserve the right to propose other or additional classes or subclasses in their motion for class certification or subsequent pleadings in this action.

17

49.     <u>Commonality</u>:  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

a.   Whether Defendants are fiduciaries of the Plans, and the scope of their fiduciary duties;

b.   Whether the Plan's fiduciaries breached their fiduciary duties under 29 U.S.C. § 1104 by engaging in the conduct described herein;

c.   The proper form of equitable and injunctive relief; and

d.   The proper measure of monetary relief.

50.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

51.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as replacement of the Plan's preferred provider organization options or removal of Plan fiduciaries, would be dispositive of non-party participants' interests.

52.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing

separate actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendants by any Class members on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

## COUNT I
**Breach of Fiduciary Duty**
**Offering a Dominated Option**

53.    Plaintiffs repeat and re-allege Paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.    Defendants are or were fiduciaries of the Plan under 29 U.S.C. §§ 1002(21).

55.    29 U.S.C. § 1104 imposes fiduciary duties of loyalty and prudence upon Defendants in connection with the administration of the Plan and the selection and monitoring of the Plan's preferred provider organization options.

56.    The scope of this fiduciary duty includes managing the Plan solely in the interest of its participants and beneficiaries and with appropriate care, skill, diligence, and prudence. Defendants are directly responsible for ensuring that each PPO option within the Plan is prudent, evaluating and monitoring the Plan's PPO options on an ongoing basis, and removing imprudent ones.

57.    Defendants breached their fiduciary duties by offering a menu of preferred provider organization options to Plan participants in which the YOUR PPO option offered no financial or

medical benefit to its enrollees when compared to the YOUR HSA-Eligible option. A prudent fiduciary would have monitored premiums, deductibles, coinsurance rates, and out-of-pocket maximums of the various PPO options to ensure that no option was financially dominated by any other option. Defendants failed to take these prudent measures to monitor the Plan's PPO options to ensure that enrollees in the YOUR PPO option received a financial benefit and therefore breached their duty of prudence to the Plan.

58.     Defendants' fiduciary breach resulted in significant losses to the Plan and its participants in the form of excessive payroll deductions and lost wages. Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief and other relief as provided by ERISA. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

## COUNT II
### Breach of Fiduciary Duty
### Failure to Provide Material Facts

59.     Plaintiffs repeat and re-allege Paragraphs 1 through 52 of the Complaint as though fully set forth herein.

60.     Defendants are or were fiduciaries of the Plan under 29 U.S.C. §§ 1002(21). Their fiduciary obligations require the communication of material facts to participants when it is known that Defendants' silence may be harmful to participants, whether or not the participant asks for this material information.

61.     Defendants breached their fiduciary duty by failing to communicate and disclose to participants that the YOUR PPO option provides no financial benefit to participants in comparison to the YOUR HSA-Eligible option.

62.     Defendants' fiduciary breach resulted in significant losses to the Plan and its participants in the form of excessive healthcare expenses, including through payroll deductions

and lost wages. Each Defendant is liable for the losses that resulted from these fiduciary breaches, as well as equitable relief and other relief as provided by ERISA. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

### COUNT III
### Failure to Monitor Fiduciaries

63. Plaintiffs repeat and re-allege Paragraphs 1 through 52 of the Complaint as though fully set forth herein.

64. The Vice President and Chief Human Resources Officer is a fiduciary of the Plan with responsibilities relating to the selection and monitoring of the Plan's PPO options.

65. The University of Rochester is responsible for appointing and removing the Vice President as a plan fiduciary. The University may additionally delegate its fiduciary responsibilities to any other person, persons, or entity. The University therefore has a fiduciary responsibility to monitor the performance of the Vice President and any other person, persons, or entity not named in the Complaint to whom the University has delegated such fiduciary responsibilities.

66. A monitoring fiduciary must ensure that its appointed fiduciaries are performing their fiduciary obligations, including those with respect the administration of the Plan, and must take prompt and effective action to protect the Plan and its participants when they fail to perform their fiduciary obligations in accordance with ERISA.

67. The University of Rochester breached its fiduciary monitoring duties by, among other things:

      a. Failing to monitor and evaluate the performance of the Vice President and any other delegated fiduciaries not named in the Complaint or have a system in place for doing so, standing idly as Class members incurred significant losses

21

as a result of the imprudent actions and omissions of the Vice President and any other delegated fiduciaries not named in the Complaint;

b.  Failing to monitor the processes by which the Plan's preferred provider organization options were selected, monitored, and retained, which would have alerted a prudent fiduciary to the breaches of fiduciary duties outlined above;

c.  Failing to monitor the processes or systems of communication by which the Vice President and any other delegated fiduciaries not named in the Complaint used, or failed to use, to convey material facts to Plan participants; and

d.  Failing to remove the Vice President or any other delegated fiduciaries not named in the Complaint whose performance was inadequate in that they selected and retained imprudent preferred provider options for the Plan, all to the detriment of the Plan and its participants.

68.    As a consequence of the foregoing breaches of the duty to monitor, Plan participants suffered millions of dollars in lost wages by way of excessive premiums that provided no additional financial or medical benefit.

69.    Pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), the University of Rochester is liable to restore to the Plan all losses suffered as a result of the fiduciary breaches that resulted from its failure to properly monitor its appointed fiduciaries to the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, as representatives of the Class defined herein, and on behalf of the Plan, pray for relief as follows:

A.    A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as Class Representatives and designation of Plaintiffs' counsel as Class Counsel;

C.    A declaration that Defendants have breached their fiduciary duties under ERISA;

D.    An order compelling Defendants to personally make good to the Plan and its participants all losses incurred as a result of the breaches of fiduciary duties

22

described herein, and to restore the Plan to their position but for this unlawful conduct;

E.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

F.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate;

G.      An award of pre-judgment interest;

H.      An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine; and

I.      An award of such other and further relief as the Court deems equitable and just.

Dated: September 23, 2025

**NICHOLS KASTER, PLLP**
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853**
*admitted to the Western District of New York*
**proc hac vice application forthcoming*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
bspecht@nka.com
bbauer@nka.com

**DON BIVENS, PLLC**
Don Bivens, AZ Bar No. 005134
        * *pro hac vice application forthcoming*
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 762-2661

ATTORNEYS FOR PLAINTIFFS

23