**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NIA GREEN, LAUREN SZYMULA, and ARIANA KING, Individually and as the Representative of a Class of Similarly Situated Persons, and on Behalf of the Health Care Plans for Faculty & Staff of the University of Rochester,<br><br>*Plaintiffs*,<br><br>v.<br><br><br>UNIVERSITY OF ROCHESTER,<br><br>*Defendant*. | Case No. 6:25-cv-06499-EAW |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.   Plaintiffs Lack Article III Standing................................................................... 2

        A.  Plaintiffs Do Not Allege an Injury-in-Fact. ............................................. 2

        B.  Plaintiffs' Alleged Injury Is Not Redressable. .......................................... 5

    II.  Plaintiffs Challenge Settlor Decisions. ........................................................... 6

        A.  Setting Employee Contribution Rates Is a Settlor Function. ..................... 7

        B.  Fees and Expenses Are Distinct from Premiums and Cost-Share Obligations. ........... 8

        C.  Plaintiffs' Argument Regarding the Plan Document Is Wrong. .................. 9

        D.  The University of Rochester Did Not Act as a Fiduciary When Implementing the Plan's Design. .............................................................. 10

        E.  The Plan's Terms Are Not Contrary to ERISA. ........................................ 11

    III. Plaintiffs Fail to Allege Any Plausible Fiduciary Breaches. ............................ 12

        A.  Plaintiffs' Comparison of the Coverage Options Is Flawed. ..................... 12

        B.  Plaintiffs Fail to Allege an ERISA Section 502(a)(2) Claim...................... 13

        C.  Plaintiffs Fail to Allege a Plausible Disclosure Claim (Count II). ............. 14

CONCLUSION................................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Bd. of Trs. of Unite Here Health*,
No. 22-cv-1458, 2023 WL 2744556 (N.D. Ill. Mar. 31, 2023) ..................................................... 5

*Alves v. Harvard Pilgrim Health Care, Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003) ........................ 14, 15

*Argay v. National Grid USA Service Co.*,
503 F. App'x 40 (2d Cir. 2012) ...................................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 7, 15

*Bell v. Pfizer, Inc.*,
626 F.3d 66 (2d Cir. 2010) ........................................................................................................... 15

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ....................................................................................................... 14

*Carlisle v. Bd. of Trs. of Am. Fed. of N.Y. States Teamsters Conf. Pension and Ret. Fund*,
No. 25-511-cv, 2025 WL 3251154 (2d Cir. Nov. 21, 2025) ..................................................... 3, 6

*Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*,
387 F. Supp. 2d 175 (E.D.N.Y. 2005), *aff'd*, 199 F. App'x 29 (2d Cir. 2006) ........................ 12

*Central States, Se. & Sw. Areas Health & Welfare Fund v. Haynes*,
966 F.3d 655 (7th Cir. 2020) ....................................................................................................... 10

*Cigna Corp. v. Amara*,
563 U.S. 421 (2011) ........................................................................................................................ 9

*Coulter v. Morgan Stanley & Co. Inc.*,
753 F.3d 361 (2d Cir. 2014) .................................................................................................... 7, 11

*Doe One v. CVS Pharmacy*,
348 F. Supp. 3d 967 (N.D. Cal. 2018) ........................................................................................... 8

*E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*,
No. 25-cv-255, 2025 WL 2371537 (S.D.N.Y. Aug. 14, 2025) ...................................................... 4

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011) ........................................................................................................... 12

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014).................................................................................................. 11

*Forgione v. Gaglio*,
  No. 13-cv-9061, 2015 WL 718270 (S.D.N.Y. Feb. 13, 2015) ..................................... 7

*Franklin v. Duke Univ.*,
  721 F. Supp. 3d 386 (M.D.N.C. 2024) ....................................................................... 5

*Glanton ex rel. ALCO Prescription Drug Plan v. AdvancePCS Inc.*,
  465 F.3d 1123 (9th Cir. 2006) .................................................................................... 6

*Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC*,
  858 F. App'x 432 (2d Cir. 2021) ................................................................................ 3

*Gustavia Home, LLC v. Hoyer*,
  362 F. Supp. 3d 71 (E.D.N.Y. 2019) .......................................................................... 1

*Hoeffner v. D'Amato*,
  605 F. Supp. 3d 467 (E.D.N.Y. 2022), *abrogated on other grounds by DirecTV, LLC v.*
  *Nexstar Media Grp., Inc.*, 162 F.4th 295 (2d Cir. 2025) ............................................. 3

*Humphries v. Mitsubishi Chem. Am., Inc.*,
  No. 23-cv-06214, 2025 WL 2402281 (S.D.N.Y. Aug. 19, 2025)............................... 13

*In re UBS AG Sec. Litig.*,
  No. 07-cv-11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ............................... 1

*Knudsen v. MetLife Group, Inc.*,
  117 F.4th 570 (3d Cir. 2024) ...................................................................................... 4

*Larson v. United Healthcare Insurance Co.*,
  723 F.3d 905 (7th Cir. 2013) ...................................................................................... 7

*Lewandowski v. Johnson & Johnson*,
  No. 24-671, 2025 WL 3296009 (D.N.J. Nov. 26, 2025) .............................................. 5

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*,
  No. 13-cv-6551, 2016 WL 2939164 (S.D.N.Y. May 19, 2016)................................... 10

*Moeckel v. Caremark, Inc.*,
  622 F. Supp. 2d 663 (M.D. Tenn. 2007)....................................................................... 8

*Navarro v. Wells Fargo & Co.*,
  No. 24-cv-3043, 2026 WL 591454 (D. Minn. Mar. 3, 2026) ....................... 3, 4, 5, 6

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d Cir. 2005).......................................................................................... 14

*Noel v. Pepsico, Inc.*,
    No. 24-cv-7516, 2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) .................................................. 11

*Pharm. Care Mgmt. Ass'n v. Mulready*,
    78 F.4th 1183 (10th Cir. 2023), *cert. denied*, 145 S. Ct. 2843 (2025)........................................ 8

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) ....................................................................................... 13

*Stern v. JPMorgan Chase & Co.*,
    No. 1:25-cv-2097, 2026 US Dist Lexis 47281 (S.D.N.Y. Mar. 9, 2026)  .................... 3, 4, 7, 12

*Su v. BCBSM, Inc.*,
    No. 24-cv-99, 2024 WL 3904715 (D. Minn. Aug. 22, 2024)..................................................... 4

*Thole v. U.S. Bank, N.A.*,
    590 U.S. 538 (2020)............................................................................................ 1, 2

*Tietjen v. Unum Life Ins. Co. of Am.*,
    No. 16-cv-7021, 2017 WL 4286317 (S.D.N.Y. Sept. 26, 2017) .............................................. 10

*Topalian v. Hartford Life Ins. Co.*,
    945 F. Supp. 2d 294 (E.D.N.Y. 2013) ....................................................................... 10

*Trs. of Int'l Union of Bricklayers & Allied Craftworkers Loc. 1 Conn. Health Fund v. Elevance, Inc.*, No. 22-cv-1541, 2024 WL 1707223 (D. Conn. Apr. 22, 2024) ........................................ 5

*United Paperworkers International Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*,
    771 F. Supp. 992 (E.D. Mo. 1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992)................................. 7

*Waller v. Blue Cross of Cal.*,
    32 F.3d 1337 (9th Cir. 1994) .................................................................................. 11

*Winsor v. Sequoia Benefits & Ins. Services LLC*,
    62 F.4th 517 (9th Cir. 2023) ................................................................................. 6, 8

**Other Authorities**

Reply Brief for Plaintiffs-Appellants, *Argay v. Nat'l Grid USA Serv. Co., Inc.*,
    No 11-3698, 2012 WL 1799141 (2d Cir. May 10, 2012)........................................................ 7

**INTRODUCTION**

Plaintiffs' Opposition (Dkt. 35) ("Opp.")[1] does not dispute the issues of fact and law[2] which establish they lack Article III standing:

- The Plan is a defined benefit plan, *i.e.*, it is a contract for the purchase of benefits;

- Plaintiffs were charged the premium and cost-share amounts identified in the Plan documents[3] for the coverage option they selected;

- Plaintiffs received all of the benefits they were owed under the Plan's terms;

- The University of Rochester did not breach any Plan terms and did not mismanage any Plan assets; and

- The Plan does not guarantee that coverage will be made available at a specific price.

Plaintiffs' alleged economic "injury" is foreclosed by the Supreme Court's decision in *Thole v. U.S. Bank, N.A.*, 590 U.S. 538 (2020) and recent authorities applying that decision to self-funded health plans. Put simply, these cases hold that plaintiffs are not injured when they receive what they paid for at the prices quoted to them. And these cases hold that a plaintiff's alleged injury due to paying higher costs for coverage is not redressable where, as here, an employer has complete authority to determine the amount it charges to employees for coverage.

---

[1] Capitalized and abbreviated terms used herein are defined in Defendants' Memorandum of Law in Support of Motion to Dismiss Amended Complaint (Dkt. 32-1) ("Motion" or "Mot.").

[2] A plaintiff "'concedes through silence' arguments made by its opponent that it fails to address." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 86-87 (E.D.N.Y. 2019) (quoting *In re UBS AG Sec. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012)).

[3] Plaintiffs complain about excerpted exhibits, *see, e.g.*, Opp. at 1. But Plaintiffs do not claim that the University of Rochester failed to attach relevant portions of the excerpted documents. Nor do Plaintiffs acknowledge that Local Rule of Civil Procedure 7(a)(4) requires a party to "file only the portion(s) of . . . supporting material that is pertinent to" a motion. Loc. R. Civ. P. 7(a)(4). The Court should consider the exhibits when deciding the Motion because Plaintiffs do not dispute the authenticity of any of the exhibits, nor do they dispute that the exhibits are referred to in the Amended Complaint and central to their claims. *See* Mot. at 3 n.1. The University of Rochester will provide complete copies of the excerpted document should the Court so request.

1

The University of Rochester acts as a settlor when it makes plan funding decisions and thus its pricing of the YOUR PPO is not governed by ERISA. Plaintiffs cite no authority holding that an employer acts as an ERISA fiduciary when setting employees' cost for health coverage. Plaintiffs claim that the University of Rochester had fiduciary duties to monitor Plan costs and implement Plan terms consistent with ERISA. But Plaintiffs conflate the cost to purchase benefits with fees paid by the Plan to service providers. And while fiduciaries are required to implement Plan terms consistent with ERISA, Plaintiffs identify no Plan term that is contrary to the statute.

Nor do Plaintiffs allege a fiduciary breach. Plaintiffs' cost comparison between the YOUR HSA-Eligible and YOUR PPO options is overly simplistic and assigns no weight to differences in participant financial preferences and claims experience. And Plaintiffs admit that they do not seek relief on behalf of the Plan and thus do not allege an ERISA section 502(a)(2) claim. Plaintiffs' disclosure claim also fails. Plaintiffs admit that the University of Rochester complied with ERISA's requirements to disclose the Plan's cost-sharing terms and that they did not rely on any misstatement (or omission) by the University of Rochester regarding the cost of the YOUR PPO.

For these reasons, and the reasons set forth below, the Court should grant the University of Rochester's Motion and dismiss the Amended Complaint in its entirety and with prejudice.

ARGUMENT

## I.    Plaintiffs Lack Article III Standing.

### A. Plaintiffs Do Not Allege an Injury-in-Fact.

Plaintiffs claim that they have alleged financial harm because "participants spend significantly more at all levels of medical spending using the YOUR PPO option." Opp. at 23. But Plaintiffs do not dispute that the Plan is a defined benefit plan, *i.e.*, it is a "contract" for the purchase of a specified suite of coverages. *Thole*, 690 U.S. at 544. Plaintiffs also do not dispute that they received all of the benefits to which they were entitled under the Plan's terms at the prices

2

quoted in the Plan documents.  *See* Mot. at 10-13.  And Plaintiffs do not claim that there is a risk they will not receive their future benefits.  *See id.  Thole* thus forecloses Plaintiffs' "injury."[4]

The Second Circuit found *Thole* dispositive in dismissing the plaintiffs' ERISA claims in *Gonzalez de Fuente v. Preferred Home Care of New York LLC*, where the plaintiffs complained about the plan's "high out of pocket costs"—but did not allege that they were denied any benefits or that the plan was "incapable of continuing to provide covered health benefits."  858 F. App'x 432, 434 (2d Cir. 2021).  The District of Minnesota also cited heavily to *Thole* when it held (again) that the plaintiffs' allegations that they paid too much for health plan coverage failed to establish an injury-in-fact.  *See Navarro v. Wells Fargo & Co.*, No. 24-cv-3043, 2026 WL 591454, at \*9-11 (D. Minn. Mar. 3, 2026) ("*Navarro II*").  As here, the plaintiffs claimed ***only*** that they overpaid for their benefits—the plaintiffs did not allege they were denied any plan benefits or that the plan lacked funding to pay future benefits.  *Id.*

The Southern District of New York's decision in *Stern v. JPMorgan Chase & Co.*, No. 1:25-cv-2097, 2026 US Dist. Lexis 47281 (S.D.N.Y. Mar. 9, 2026), Dkt. 45 ("*JPMorgan* Opinion"), is not to the contrary.[5]  The plaintiffs there alleged that the employer mismanaged the plan's relationship with its pharmacy benefit manager (PBM), which caused participants to pay too much in premiums and out-of-pocket costs (deductibles, copayments and coinsurance).  *Id.* at 6-7.  The court held that the plaintiffs' allegations regarding excessive premiums were too

---

[4] Plaintiffs' citations (Opp. at 24) are inapposite.  *See Carlisle v. Bd. of Trustees of Am. Fed. of New York States Teamsters Conference Pension and Retirement Fund,* No. 25-511-cv, 2025 WL 3251154, at \*1 (2d Cir. Nov. 21, 2025) (plaintiff did not receive his promised benefits); *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 480 (E.D.N.Y. 2022), *abrogated on other grounds by DirecTV, LLC v. Nexstar Media Grp., Inc.*, 162 F.4th 295 (2d Cir. 2025) (plan at issue was not a defined benefit plan).

[5] The *JPMorgan* Opinion did not appear to consider the *Navarro II* decision, which issued just several days prior.

3

speculative to establish standing, *id.* at 13-14; but, the court held that *Thole* did not foreclose the plaintiffs' alleged injury due to "out-of-pocket overpayments." *Id.* at 14-19.  The plaintiffs claimed to have paid more for drugs at the pharmacy than they would have if the employer had prudently managed the Plan's PBM, *see id.*—they "directly b[ore] the cost for the overcharge."[6]  Here, there have been no "out-of-pocket **overpayments**."  Plaintiffs do not allege that they paid more than they should have in deductibles, coinsurance and copayments due to the costs charged to the Plan by a service provider.  *See infra* at 8-9.  Plaintiffs paid the cost-sharing amounts identified in the Plan documents for the coverage option they selected.  Plaintiffs cannot manufacture an injury by claiming that they "'might have received' better or different benefits than what they were promised under the Plan's terms." *Navarro II*, 2026 WL 591454, at *10.

Further, *Knudsen v. MetLife Group, Inc.* held that a participant in a self-funded health plan **theoretically** could establish standing, even where she received all of her plan benefits, **if** she alleged an injury arising out of a breach of plan terms or mismanagement of plan assets.  117 F.4th 570, 579 (3d Cir. 2024); *see also Navarro II*, 2026 WL 591454, at *9 (holding that a plaintiff must allege "some specific underlying misconduct—for example, 'breaching the terms of the plan'— that can be plausibly connected to the purported harm" (alteration omitted)).  Plaintiffs do not attempt to fit their theory into this exception to *Thole*.  To the contrary, Plaintiffs admit that the University of Rochester did **not** breach any Plan terms or mismanage Plan assets.  *See generally* Opp.; *see also* Mot. at 13-15.[7]

---

[6] Complaint ¶¶ 247-249, *Stern v. JPMorgan Chase & Co.*, No. 25-cv-2097 (S.D.N.Y. Mar. 13, 2025), Dkt. 1.

[7] None of the other cases cited by Plaintiff, Opp. at 3 n.3, 24-25, are relevant because they do not involve allegations by participants in self-funded health plans that they paid too much for coverage. *See E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, No. 25-cv-255, 2025 WL 2371537, at *7-8 (S.D.N.Y. Aug. 14, 2025) (insurer and administrator of self-funded plans alleged an injury-in-fact resulting from fraudulent provider billing practices); *Su v. BCBSM, Inc.*,

### B. Plaintiffs' Alleged Injury Is Not Redressable.

Plaintiffs' "injury" is not redressable. *Cf.* Opp. at 27-28. Plaintiffs admit that the Plan does *not* guarantee that participants will be charged any specific amount for health insurance coverage. *See* Mot. at 14. And, the Plan affords the University of Rochester, in its role as the Plan's settlor, the ability to increase (or decrease) employee contribution rates by stating that employees pay a specified "benefit cost share" and "[t]he Employer pays the balance of any premiums and administrative expenses." Defs.' Ex. 1 at 5; *cf.* Opp. at 20 n.20. As a result, there is no guarantee that Plaintiffs' theory of relief would result in lower employee costs. *See Navarro II*, 2026 WL 591454, at *10; *Lewandowski v. Johnson & Johnson*, No. 24-671, 2025 WL 3296009, at *6 (D.N.J. Nov. 26, 2025). That reasoning applies even though Plaintiffs demand equitable and injunctive relief. *See Navarro II*, 2026 WL 591454, at *4, *10 (finding the plaintiffs alleged injuries were not redressable where the plaintiffs sought "injunctive and other equitable relief"); *cf.* Opp. at 27.[8]

Any hypothetical monetary relief would go back to the Plan, and not Plaintiffs. *See* Opp. at 29. This exact issue was addressed by the Ninth Circuit in *Winsor v. Sequoia Benefits & Insurance Services LLC*, where the plaintiffs alleged they paid excessive premiums for health

---

No. 24-cv-99, 2024 WL 3904715, *1-2 (D. Minn. Aug. 22, 2024) (self-funded health plans had an injury-in-fact where service provider charged them for tax liabilities that they did not owe and did not agree to pay); *Trs. of Int'l Union of Bricklayers & Allied Craftworkers Loc. 1 Conn. Health Fund v. Elevance, Inc.*, No. 22-cv-1541, 2024 WL 1707223, at *1-3 (D. Conn. Apr. 22, 2024) (trustees of multiemployer welfare benefit plans had standing to sue plans' administrator for allegedly requiring the plans to pay more than the negotiated in-network rates for medical services); *Franklin v. Duke Univ.*, 721 F. Supp. 3d 386, 389-90 (M.D.N.C. 2024) (pension plan participant alleged an injury-in-fact where she claimed to have received reduced benefits due to actuarial equivalency formulas); *Acosta v. Bd. of Trs. of Unite Here Health*, No. 22-cv-1458, 2023 WL 2744556, at *1-2 (N.D. Ill. Mar. 31, 2023) (multiemployer employee welfare benefit plan participants with fully insured benefits alleged an injury-in-fact where they claimed their contribution rates—which were set by collective bargaining agreements—were too high).

[8] Plaintiffs conflate the University of Rochester's role as an ERISA fiduciary (Plan Administrator) and Plan settlor (Plan Sponsor). *See* Opp. at 28. As Plan settlor, the University of Rochester has complete authority to increase (or decrease) employee contributions at any time. *See infra* at 10-11.

insurance coverage.  62 F. 4th 517, 526-27 (9th Cir. 2023).  As the court held, even if the allegedly excess premiums were deposited into the plan, there was "nothing in the plan documents or in law" that would require (or "make it probable" that) the employer would return the funds to participants. *Id.* at 527.  To the contrary, the employer, in its capacity as settlor, would be free to reduce its contributions to the plan until such funds were exhausted.  *Id.* at 526-27 (citing *Glanton ex rel. ALCO Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1125 (9th Cir. 2006)); *see also Navarro II*, 2026 WL 591454, at \*10 (holding that "nothing would prevent Wells Fargo from offsetting its own contributions going forward while making no reduction to the contributions it requires from Plaintiffs") (citation modified).[9]  The same rationale dictates that Plaintiffs' "injury" is not redressable.  *Cf. Carlisle*, 2025 WL 3251154, at \*1 (alleged harm was redressable where the plaintiff "sought equitable and injunctive relief to improve the Plan's financial condition and, consequently, to improve [his] prospects of receiving his pension benefits").[10]

## II.    Plaintiffs Challenge Settlor Decisions.

Plaintiffs admit that "ERISA distinguishes between fiduciary functions and settlor functions," Opp. at 13, and that employers, like the University of Rochester, typically wear both "hats"—they serve as both plan settlors and plan fiduciaries, *id.*  Plaintiffs do not identify any *fiduciary* act by the University of Rochester that violated ERISA.[11]

---

[9] The plaintiffs in *Glanton* and *Winsor* argued that they suffered individual injuries—and the courts *rejected* that argument. *Cf.* Opp. at 29-30.  Plaintiffs further try to distinguish *Glanton* and *Winsor* because those cases involved third-party misconduct. *See* Opp. at 29-30.  But this distinction does not change the fact that any monetary relief awarded here would go back to the Plan.

[10] Plaintiffs cite cases (Opp. at 29) involving defined contribution 401(k) plans where the plaintiffs alleged an injury to the plan *and their benefits under the plan*—"the value of [their] specific, individual investment account[.]" *Navarro II*, 2026 WL 591454, at \*11.  These cases are irrelevant because Plaintiffs do not allege that their "*benefits* under the Plan were diminished" in any way. *Id.* at \*11.  And, Plaintiffs do not have any claim to the Plan's assets because a defined benefit plan consists of a general pool of assets. *See id.*; *see also* Mot. at 22-23.

[11] Plaintiffs argue that the Court should determine fiduciary status on summary judgment, Opp. at 17, 23 n.18, but they do not identify any question of fact as to whether the University of Rochester

### A.  Setting Employee Contribution Rates Is a Settlor Function.

Plan funding decisions are settlor decisions.  *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("'Settlor' functions, . . . include conduct such as . . .  funding[] a plan.").  Indeed, the same United States Department of Labor ("DOL") amicus brief in *Hutchins v. HP Inc*. that Plaintiffs attach to their Opposition states unequivocally "that plan funding decisions are settlor decisions, not fiduciary ones."  Pls.' Ex. 2 at 13.  Plaintiffs cite no authority holding that an employer acts as a fiduciary when determining what it charges to employees to fund Plan costs.  To the contrary, "determining cost-sharing terms, and choosing between pricing models are components of benefit design," *i.e.*, it is settlor conduct.  *See JPMorgan* Opinion at 26.

Plaintiffs' attempt to distinguish the authority holding that an employer acts as a settlor when setting employee contribution rates for health coverage, Opp. at 17-18, falls flat.  Plaintiffs fail to acknowledge that in *Argay v. National Grid USA Service Co.*, the Second Circuit rejected fiduciary breach claims predicated on "inflated and excessive premiums,"[12] holding that the employer "***did not act in a fiduciary capacity in setting premiums***."  *Argay*, 503 F. App'x at 42 (emphasis added).  Plaintiffs also do not dispute that in *Larson v. United Healthcare Insurance Co.*, 723 F.3d 905, 917 (7th Cir. 2013), the Seventh Circuit held that a plan's copayment requirements are part of the content of the plan.  Further, Plaintiffs ignore the portion of *United Paperworkers International Union, AFL-CIO, CLC v. Jefferson Smurfit Corp.*, 771 F. Supp. 992

---

was acting as a settlor when setting the amount charged to employees for the YOUR PPO option, *see generally id.*  Plaintiffs' authorities, Opp. at 17, are inapposite because they rely on authority pre-dating *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and/or analyze fiduciary status under state law.  *See*, *e.g.*, *Forgione v. Gaglio*, No. 13-cv-9061, 2015 WL 718270, at *7 (S.D.N.Y. Feb. 13, 2015) (holding that post-*Twombly*, "district courts [were] admonished by the Supreme Court to require plaintiffs to allege facts sufficient 'to state a claim to relief that is plausible on its face,'" including with regard to fiduciary status).
[12] Reply Brief for Plaintiffs-Appellants, *Argay v. Nat'l Grid USA Serv. Co., Inc.*, No. 11-3698, 2012 WL 1799141, at *5, *16 (2d Cir. May 10, 2012).

(E.D. Mo. 1991), *aff'd*, 961 F.2d 1384 (8th Cir. 1992), which held that an employer acted as a settlor when increasing premiums for health coverage where no plan term afforded participants guaranteed premium rates.  Plaintiffs also do not dispute that the Tenth Circuit has held that a health plan's design includes its "cost-sharing terms."  *Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1201 (10th Cir. 2023), *cert. denied*, 145 S. Ct. 2843 (2025).[13]  Tellingly, Plaintiffs attempt to avoid the fact that the DOL has opined setting contributions rates and copayments for a health plan is a settlor function by misrepresenting *Winsor*.  *See* Mot. at 21; Opp. at 18-19.  Although the Ninth Circuit affirmed the dismissal of the case for a lack of Article III standing, its analysis regarding redressability was based on the conclusion that an employer is free to make (and revise) plan funding decisions in a settlor capacity.  *See Winsor*, 62 F.4th at 526-27.[14]

## B. Fees and Expenses Are Distinct from Premiums and Cost-Share Obligations.

Plaintiffs' claim that the University of Rochester breached its fiduciary duty to prudently monitor the Plan's fees and expenses is a red herring.  *See, e.g.*, Opp. at 2, 4, 7, 16.  An employer acts as a fiduciary when selecting and monitoring plan service providers because the employer is exercising discretionary authority and control over the plan's administration.  *See* Dep't of Labor, *Understanding Your Fiduciary Responsibilities Under a Group Health Plan* 5 (Sept. 2023).[15]  Service provider fees and expenses, however, are separate and distinct from the costs at issue

---

[13] Plaintiffs' attempt to distinguish *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663 (M.D. Tenn. 2007) and *Doe One v. CVS Pharmacy*, 348 F. Supp. 3d 967 (N.D. Cal. 2018) also fails.  *See* Opp. at 17-18 n.12.  Plaintiffs do not address the critical holding of these cases, *i.e.*, adopting a package of healthcare benefits and setting a cost structure for those benefits are settlor functions and an employer may act in its own interest when doing so.  *See* Mot. at 19-20.

[14] Plaintiffs claim that in its amicus brief in *Winsor*, "the DOL . . . took a position that overwhelmingly supports Plaintiffs' position in this case," *i.e.*, that they have standing.  Opp. at 19.  However, the Ninth Circuit rejected the DOL's position and held that the plaintiffs lacked Article III standing because, among other things, their theory of redressability was dependent on the employer's settlor decision on how to fund the plan.  *See Winsor,* 62 F.4th at 527.

[15] https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/publications/group-health-plan-fiduciary-responsibilities.pdf.

here—employee contributions and cost-share obligations for purchasing YOUR PPO coverage.

Plaintiffs cite no authority holding that a fiduciary's duty to monitor the fees and expenses charged by service providers has any applicability to a settlor's plan funding decisions. Plaintiffs rely on a DOL publication which states that a plan "fiduciary must ensure that those fees and expenses are reasonable, necessary for the plan's operation, and not excessive for the services provided." *Id.* But that portion of the publication specifically addresses the fees charged by service providers *to the plan* for their services. *See id.* ("Fees are just one of several factors fiduciaries need to consider when deciding on service providers . . . . While the law does not specify a permissible level of fees, it does require that fees charged *to a plan* be 'reasonable.'" (emphasis added)). The DOL publication does *not* address the price that an employer may charge employees for access to plan coverage. Indeed, the publication confirms that an employer "act[s] on behalf of its business, [and] not the plan" when "[d]etermining the [plan's] benefit package"—the benefits made available under the plan and their purchase price. *Id.* at 2.

Plaintiffs imply that the Plan's PPO provider's fees caused the costs for the YOUR PPO option to be too high, *see* Opp. at 7, but Plaintiffs do not allege that any Plan service provider charged an excessive fee for its services—nor do they make any attempt to tie the fees charged by *any* Plan service provider to the costs they paid for the YOUR PPO option. *See generally* Opp.

### C. Plaintiffs' Argument Regarding the Plan Document Is Wrong.

Plaintiffs' claim that University of Rochester cannot rely on the Plan's summary plan descriptions (SPDs), Opp. at 13, is wrong. *Cigna Corp. v. Amara* addressed whether the terms of a plan's SPD are "terms of the plan" that can give rise to a claim for benefits under ERISA section 502(a)(1)(B). 563 U.S. 421, 437 (2011). The issue in *Amara* was whether an erroneous representation in an SPD could require a plan to pay benefits. *See id.* The Court held that where the terms of a plan document and an SPD conflict, the plan document controls. *See id.* at 437-38;

*see also Central States, Se. & Sw. Areas Health & Welfare Fund v. Haynes*, 966 F.3d 655, 659 (7th Cir. 2020) (citing *Amara* to hold that "if the plan and the [SPD] conflict, the plan controls").

*Amara* is inapposite. Plaintiffs are not asserting an ERISA section 502(a)(1)(B) benefits claim. *See generally* Am. Compl. Nor do Plaintiffs argue that the SPDs conflict with the terms of the Plan document. Courts have held that *Amara* has no application where, as here, a plaintiff "merely asserts that additional Plan documents may exist" but does not "assert that those additional Plan documents" conflict with the plan documents submitted to the court for review. *See Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 335 (E.D.N.Y. 2013). Courts have similarly held that *Amara* does not apply where, as here, there is no allegation that "terms of the [SPDs] are misleading." *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.*, No. 13-cv-6551, 2016 WL 2939164, at *7 (S.D.N.Y. May 19, 2016). And, unlike *Amara*, the Plan's SPDs *are* enforceable Plan documents.[16] In sum, Plaintiffs articulate no reason why the Court should not enforce the terms of the Plan's SPDs.

### D. The University of Rochester Did Not Act as a Fiduciary When Implementing the Plan's Design.

Plaintiffs claim the University of Rochester acted as a fiduciary in "implement[ing]" the Plan's design because the Plan afforded it discretion to set select Plan coverage options and set employee contributions—that is, the Plan's terms did not require the University of Rochester, as

---

[16] The Wrap Plan makes clear that the SPDs are incorporated into the Plan and contain enforceable Plan terms. *See* University of Rochester Welfare Benefits Plan Document (attached as Defs.' Ex. 8), at 1 ("This document together with any . . . ***summary plan descriptions*** . . . constitute the following plans[.]" (emphasis added)). Accordingly, Plaintiffs' claim that terms of the SPDs are unenforceable, Opp. at 3, is wrong. *See Li v. First Unum Life Ins. Co.*, No. 23-cv-6985, 2025 WL 326492, at *13 (S.D.N.Y. Jan 29, 2025) ("[W]here SPDs are expressly incorporated into an ERISA plan, their terms are enforceable as part of the ERISA plan."), *aff'd*, No. 25-411, 2026 WL 112655 (2d Cir. Jan. 15, 2026); *Tietjen v. Unum Life Ins. Co. of Am.*, No. 16-cv-7021, 2017 WL 4286317, at *2 (S.D.N.Y. Sept. 26, 2017) ("Even after *Amara*, however, courts have found that SPDs are enforceable if they are explicitly incorporated into their plans[.]").

Plan Administrator, to offer a "dominated option." Opp. at 3, 14. But Plaintiffs ignore that the benefit booklets, which identify the coverage options and applicable cost-share amounts, are part of the Plan's terms. *See, e.g.*, Defs.' Ex. 3 at 1 (the "benefit booklet is intended to be read with, and considered part of, the Plan"); *see also id.* at 2-30 (identifying cost-share amounts). Indeed, Plaintiffs identify no Plan term that afforded the Plan Administrator discretion to select coverage options or set employee contributions. *See generally* Opp. And, Plaintiffs' theory is contrary to the DOL's amicus brief in *Hutchins*, where it opined that "setting the amount the sponsor contributes to the Plan, as well as the level of benefits provided, are settlor functions solely within the sponsor's control, and cannot be dictated by a fiduciary's decision." Pls.' Ex. 2 at 24.[17]

Moreover, the implementation of a plan design decision is a fiduciary act ***only*** where the employer exercises discretion when ***carrying out*** the settlor's plan design decision. *See, e.g.*, *Noel v. Pepsico, Inc.*, No. 24-cv-7516, 2026 WL 558118, at *13 (S.D.N.Y. Feb. 27, 2026) (holding that an employer did not engage in a fiduciary act when it implemented a health plan's wellness program pursuant to the plan's terms, *i.e.*, it "carr[ied] out the Plan as written, rather than . . . improperly executing discretionary functions"); *see also Coulter*, 753 F.3d at 367 ("[T]he discretionary act must be undertaken with respect to plan management or administration.").[18]

### E.  The Plan's Terms Are Not Contrary to ERISA.

Plaintiffs claim that the University of Rochester "had a duty to monitor the Plan to ensure its terms were consistent with ERISA because 'the duty of prudence trumps the instructions of a plan document.'" Opp. at 3 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421

---

[17] Unlike the plan at issue in *Konya v. Lockheed Martin*, the Plan does not grant the Plan Administrator fiduciary discretion to select coverage options or set employee contribution rates. *See* Pls.' Ex. 1 at 6.

[18] *Accord Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342 (9th Cir. 1994) (employer's decision to terminate a retirement plan was a settlor decision, its implementation of that decision through its selection of annuity provider was a fiduciary act).

11

(2014)).  But Plaintiffs do not identify any Plan term that is contrary to ERISA.  *See generally* Opp.  And even if Plaintiffs had done so, Plaintiffs would still need to allege plausibly that the University of Rochester acted imprudently.  *See Cement & Concrete Workers Dist. Council Pension Fund v. Ulico Cas. Co.*, 387 F. Supp. 2d 175, 185 (E.D.N.Y. 2005) ("[T]he inquiry into whether a plan trustee has breached a fiduciary duty must be squarely directed at determining whether any of the trustees' actions or omissions in managing and administering the plan breached an ERISA fiduciary duty, rather than on whether the terms of the plan administered by the trustee violated ERISA in some respect."), *aff'd*, 199 F. App'x 29 (2d Cir. 2006).  Plaintiffs cite no authority holding that a fiduciary acts imprudently by collecting employee contributions that are set by the plan's settlor consistent with a plan's terms.[19]

Plaintiffs also cannot "recast[] their structural criticisms" of the Plan as a purported failure to monitor.  *JPMorgan* Opinion at 27.  The "essential character" of Plaintiffs' claim challenges the Plan's design.  *Id.*  At bottom, Plaintiffs are arguing that they are entitled to health insurance coverage at a specific cost, but that is not what ERISA requires.  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 107 (2d Cir. 2011) ("ERISA does no more than protect the benefits which are due to an employee under a plan.").

### III.   Plaintiffs Fail to Allege Any Plausible Fiduciary Breaches.

#### A. Plaintiffs' Comparison of the Coverage Options Is Flawed.

The YOUR HSA-Eligible option is not a "materially identical, cheaper option" than the YOUR PPO option.  *Cf.* Opp. at 2.  Plaintiffs do not dispute that there are differences regarding how and when participants' cost-share obligations are structured under the coverage options.  Nor

---

[19] Plaintiffs' policy arguments, Opp. at 16, are based on hypothetical scenarios.  Plaintiffs do not allege that the Plan immunized the University of Rochester from liability or created a cost-sharing structure that exceeded the Plan's funding needs.  *See generally* Am. Compl.

do Plaintiffs dispute that there are differences in the rules governing FSAs and HSAs.[20]  Plaintiffs'

cost-comparison assigns *no* weight to these differences.

Moreover, Plaintiffs' cost comparison is flawed.  Plaintiffs admit that:

- YOUR PPO participants *only* pay a copay for certain services and prescription

    drugs; YOUR HSA-Eligible participants must meet the deductible before receiving

    *any* coverage for these services.  *See* Mot. at 5-6.  Plaintiffs' cost-comparison chart

    does not reflect this difference.  *See* Opp. at 6 n.6.

- Unlike the YOUR HSA-Eligible option, the YOUR PPO option provides coverage

    for outpatient mental health services and oral chemotherapy drugs at 100%, *with*

    *no out-of-pocket cost to participants*.  *See* Mot. at 6, 26.

- Unlike the YOUR HSA-Eligible option, YOUR PPO participants may participate

    in a prescription drug savings program, and "some participants may pay less for

    some prescription drugs under this [savings] program," Opp. at 7.

Because the coverage options do not make for an "apple-to-apple" comparison, Plaintiffs'

fiduciary breach claim fails.  *Singh v. Deloitte LLP*, 123 F.4th 88, 95 (2d Cir. 2024).[21]

### B.  Plaintiffs Fail to Allege an ERISA Section 502(a)(2) Claim.

Plaintiffs claim that they have plausibly alleged an ERISA section 502(a)(2) claim because

they have established Article III standing.  *See* Opp. at 30.  But even if Plaintiffs had established

---

[20] Plaintiffs do not dispute that the University of Rochester's decision to contribute to participants' HSA accounts is an employer decision that is *not* subject to ERISA.  *See* Mot. at 22 n.16.

[21] The comparison of the value afforded by each coverage option is not a merits issue.  *Cf.* Opp. at 12.  Courts regularly dismiss breach of fiduciary duty claims predicated on "excessive" fees where, as here, a plaintiff fails to plausibly allege facts establishing "apple-to-apple" comparators.  *See, e.g.*, *Humphries v. Mitsubishi Chem. Am., Inc.*, No. 23-cv-06214, 2025 WL 2402281, at *12 (S.D.N.Y. Aug. 19, 2025) (dismissing excessive fee claim where the complaint was "silent on the number of services actually provided" by the comparators "as well as the quality of such services").

Article III standing, Plaintiffs' ERISA section 502(a)(2) claim would still fail because they have not stated a statutorily-authorized **claim for relief**. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.").

Courts have consistently held that allegations of losses to a putative class of plan participants, and not the plan itself, do not state a section 502(a)(2) claim. *See* Mot. at 26-27 (collecting cases). Plaintiffs admit they are seeking relief **only** on behalf of the class of participants who enrolled in the YOUR PPO option. *See* Am. Compl. ¶¶ 1, 61, 73. Because Plaintiffs are not seeking relief on behalf of the Plan as a whole, their section 502(a)(2) claims should be dismissed.

## C. Plaintiffs Fail to Allege a Plausible Disclosure Claim (Count II).

Plaintiffs' Opposition confirms that they cannot state a disclosure claim. Plaintiffs do not dispute that the University of Rochester complied with the federal regulation implementing ERISA's SPD requirement by disclosing the Plan's cost-sharing provisions. *See* Opp. at 20-21; *see also* Mot. at 29. Plaintiffs' attempt to superimpose disclosure obligations not required by ERISA are without merit. The Second Circuit has held that ERISA's fiduciary standards do not require disclosures that exceed those required by ERISA itself. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005) (fiduciary "has no duty to disclose to plan participants information additional to that required by ERISA"); *see also Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 214 (D. Mass. 2002) ("It would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed."), *aff'd*, 316 F.3d 290 (1st Cir. 2003).[22]

---

[22] Plaintiffs claim that *Alves* "is not on point" because that case involved the "disclosure of the price the Plan paid for prescription drugs under the arrangement with the PBM." Opp. at 21 n.15. But *Alves* held that ERISA's fiduciary standards do not require more than ERISA's disclosure

14

Further, Plaintiffs fail to plausibly allege any material misrepresentations or omissions. Plaintiffs claim that the University of Rochester "misleads participants by suggesting that there are certain financial benefits to selecting the YOUR PPO option." Opp. at 19-20. But the YOUR PPO option unquestionably provides financial benefits to participants. *See supra* at 12-13; *see also* Mot. at 6, 24-26. Additionally, Plaintiffs' claim that the "material fact is not the cost itself, but the fact that the same service is available for less," Opp. at 21, is refuted by the many courts that have rejected disclosure claims related to the pricing of healthcare coverage options where, as here, contribution and cost-share amounts are disclosed, *see* Mot. at 29-30 (collecting cases).

Plaintiffs also fail to plead the second element of a disclosure claim: detrimental reliance. Plaintiffs claim that "one cannot 'rely' on information that was not provided." Opp. at 22. But the Second Circuit has held that detrimental reliance is an element of a disclosure claim—***even where it is based on an omission***. *See Bell v. Pfizer, Inc.*, 626 F.3d 66, 75 (2d Cir. 2010) ("[W]here a plaintiff asserts a breach of fiduciary [duty] claim based on a material misrepresentation or omission, the plaintiff must establish detrimental reliance."). Plaintiffs' failure to allege that they relied on ***any*** representations (or omissions) regarding the pricing of the coverage options when they made their coverage selections is fatal to their disclosure claim. *See* Mot. at 30.[23]

**CONCLUSION**

For all the reasons stated above, the University of Rochester respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

---

regulations, and none of factual differences between *Alves* and this action affect how that legal standard would apply. *See* 204 F. Supp. 2d at 214.

[23] Plaintiffs request that the trier of fact evaluate the University of Rochester's communications with participants regarding plan benefits for misrepresentations and omissions. *See* Opp. at 22. But Plaintiffs cannot request discovery to avoid their obligation to plead a plausible claim for relief. *See Twombly*, 550 U.S. at 546.

Dated: March 13, 2026

Respectfully submitted,

*/s/ Mark C. Nielsen*
GROOM LAW GROUP, CHARTERED
Mark C. Nielsen, Bar No. 2821957
Michael J. Prame, Bar No. MP4712
Lars C. Golumbic (admitted *pro hac vice*)
Kara P. Wheatley (admitted *pro hac vice*)
Kathryn E. Panish (admitted *pro hac vice*)
1701 Pennsylvania Avenue N.W., Suite 1200
Washington, D.C. 20006
Tel: (202) 861-5429
Fax: (202) 659-4503
mnielsen@groom.com
mprame@groom.com
lgolumbic@groom.com
kwheatley@groom.com
kpanish@groom.com

*Counsel for Defendant University of Rochester*

16

## AFFIRMATION OF SERVICE AND FILING

I, Mark C. Nielsen, affirm and certify that on the 13th day of March, 2026, Defendant's Memorandum of Law in Support of Motion to Dismiss was filed using the CM/ECF system, which will send notification to all counsel of record.

Respectfully Submitted,

*/s/ Mark C. Nielsen*
Mark C. Nielsen

17